[Civ. No. 1769. Third Appellate District.—May 15, 1918.]

MARK L. BURNS, Appellant, v. G. F. BAUER, Respondent.

ACTION ON PROMISSORY NOTE—LACK OF CONSIDERATION—FRAUD—
SUFFICIENCY OF EVIDENCE.—In this action by the assignee of a
promissory note executed to a corporation in payment for stock,
it is held the evidence supports the finding that there was no con-
sideration for the note, and that it was obtained by the corporation
through fraudulent representations.

ID.—NOTE PROCURED BY FRAUD—ACTION BY ASSIGNEE—INNOCENT
HOLDER—BURDEN OF PROOF.—In an action by the assignee of a
corporation on a note given in payment for its stock, and procured
from the maker by fraud and misrepresentations, the burden is
upon the assignee to prove he is an innocent holder.

APPEAL from a judgment of the Superior Court of El
Dorado County. N. D. Arnot, Judge.

The facts are stated in the opinion of the court.

F. G. Eby, for Appellant.

Abe Darlington, and Wm. F. Bray, for Respondent.

CHIPMAN, P. J.—Plaintiff brought the action to recover
on a promissory note executed and delivered by defendant at
Diamond Springs, California, September 7, 1915, to Great
Western Securities Corporation, due one year after date at
seven per cent interest, assigned to plaintiff by the following
indorsement: "Pay to the order of Mark L. Burns, Great
Western Securities Corporation, by S. H. Whisner, Pres.
Payment Guaranteed. Signed: S. H. Whisner."

In his amended answer, defendant admits the execution of
the note but denies that it was executed or given for a valuable
or any consideration, and alleges that it is without considera-
tion and void. Denies that plaintiff became the owner or
holder of said note before maturity or that he is the owner or
holder thereof for value or otherwise. Alleges that said note
was given in payment of certain stock of said Great Western
Securities Corporation, which said stock was represented to
defendant by said corporation "to be valuable and to be rea-
sonably worth the price at which it was sold to defendant, but

said stock was then, and ever since has been, entirely worthless and was known at the time of said agreement to sell the same to defendant by said Great Western Securities Corporation, a corporation, to be worthless and of no value whatever; and there was no other consideration for said promissory note''; that at the time said note was assigned to him, plaintiff knew that it was without consideration and knew that it was void and that the stock of said corporation was worthless, and that he did then and there conspire with said corporation to defraud defendant by having said note indorsed by said Whisner to plaintiff ''for the purpose of preventing defendant from making his defense of want of consideration when suit should be brought upon said note''; that ''no stock was ever issued to defendant by said Great Western Securities Corporation, a corporation, until the time of the pretended assignment of said note to plaintiff.''

As a further and separate answer and by way of affirmative defense, defendant alleges certain facts, most of which were by the court found substantially as alleged, and may be stated as given in the findings, as it will shorten somewhat this opinion. The cause was tried by the court without a jury. At the close of the trial and the coming in of the closing brief, the court made the following minute order:

''In our opinion the plaintiff was not an innocent purchaser for value of the note sued on. The inadequacy of the consideration he paid for the note put him upon inquiry as to the circumstances under which the note was given and the consideration the payee had given Bauer. This was easy for him to have done. He could and ought to have communicated with Bauer. He did not even make inquiry of Whisner. His friend Eby was the secretary of the payee. He made no inquiry of him. His only concern was to ascertain if Bauer was good. There was no need of rescission because the stock was valueless. The motion to strike out is denied. Counsel for defendant may take ten days to prepare and serve findings herein.

                              ''N. D. ARNOT,
                                        ''Judge.''

In due course the court made the following findings of fact: That said promissory note was given in part payment for 750 shares of the capital stock of said Great Western Securities Corporation (hereinafter referred to as the Securities Corpo-

ration), which said stock was and is of no value whatever; that
on July 8, 1916, said Securities Corporation, by its president,
S. H. Whisner, assigned said note to plaintiff for the con-
sideration paid of $350, and at the making of said assignment
the said Whisner personally guaranteed payment thereof, no
part of which or interest thereon has been paid; that the stock
of said corporation, in part payment for which said note was
given, was represented to defendant, at the time he contracted
to purchase the same, to be valuable and reasonably worth the
price at which it was sold to defendant, to wit, the sum of one
dollar per share, but in fact said stock was then worthless and
of no value, which was well known to said corporation; "and
plaintiff, at the time said note was assigned to him, knew that
the Great Western Securities Corporation was involved in liti-
gation, but made no effort to ascertain whether or not said
note was given for a valuable consideration." The transac-
tion, as found by the court, is set forth as follows in its find-
ings: "That on the seventeenth day of February, 1914, one
J. S. Danner, the agent of said Great Western Securities Cor-
poration, called upon defendant at his home in the County of
El Dorado, state of California, and asked him to become a
subscriber for shares of stock in Great Western Securities Cor-
poration, a corporation. Said J. S. Danner represented to
defendant that said corporation had been organized for the
purpose of erecting a twenty-story building in the city of
Sacramento, state of California, and he further stated to de-
fendant that said corporation had obtained an option on a lot
on J Street between Fifth Street and Sixth Street in said
city, and stated that work on said building would commence
not later than October 31, 1914; that said corporation already
had a building permit for said building and had a large por-
tion thereof leased to prospective tenants, and further stated
to the defendant that even if thirty per cent of said building
were idle and untenanted, the net income therefrom would be
fifteen per cent. . . . That the representations of said J. S.
Danner, as agent of said corporation, as aforesaid, were false
at the time said representations were made by said J. S.
Danner, and said corporation knew that said representations
were false at the time said Danner made the same. That it
was reliance upon the representations of said J. S. Danner,
made as aforesaid, that caused defendant to enter into the
agreement to purchase 750 shares of the capital stock of said

plaintiff corporation, and if it had not been for said representations aforesaid defendant would not have entered into said agreement to purchase said stock. . . . That by reason of the representations of said corporation as above set forth defendant entered into a contract with it for the purchase of 750 shares of its capital stock and paid on account thereof a total of more than $622, and gave the promissory note mentioned in plaintiff's complaint for the balance of the agreed purchase price and interest remaining due at the date of said note. That if it had not been for the false and fraudulent representations of said corporation, as herein set forth, defendant would not have contracted for any of said stock. That the promissory note sued upon herein was assigned to the plaintiff by said Great Western Securities Corporation, by S. H. Whisner, its president, on the eighth day of July, 1916; that the consideration paid therefor was the sum of $350; that the plaintiff is and was on said eighth day of July, 1916, a lawyer engaged in a general law practice; that the stock for which said note was given in part payment was not issued until said eighth day of July, 1916, but was issued on said day; that Mr. F. G. Eby, who is the plaintiff's attorney in this action, was the secretary of said Great Western Securities Corporation at the time said stock was issued and at the time this action was commenced; that plaintiff, at the time he purchased said note, knew that said Great Western Securities Corporation and other corporations organized and controlled by said S. H. Whisner were involved in much litigation; that plaintiff made no inquiry or effort to learn whether or not said note was valid and given for a valuable consideration, but did inquire into the financial condition of the defendant and learned that he was able to pay the note and then purchased the same, intending to bring suit upon it if it should not be promptly paid.''

As conclusions of law the court found that said promissory note was procured by fraud and is void for want of consideration; that plaintiff is not an innocent purchaser nor a *bona fide* holder of said note; that plaintiff is entitled to take nothing by this action; that said note be canceled by the clerk of this court, and that defendant recover his costs of suit herein.

Judgment was accordingly entered, from which plaintiff appeals.

The evidence abundantly supports the findings that there was no consideration for the note sued upon, and that it was obtained by the Securities Corporation through false and fraudulent representations. Not only is defendant's narrative of the false statements made to him by the Securities Corporation's agents uncontradicted, but the record contains specimens of the literature, highly misleading, gotten out by the Securities Corporation and exhibited to its victims, including defendant, as inducement to purchase its shares. As part of this promotion propaganda is found in the record the photograph of an imposing structure of architectural beauty looming skyward to the ambitious height of twenty stories, twice the height of any of the finer business buildings in the city of Sacramento. These flaming photographs were accompanied by commendatory letters written by officials of prominent banks in said city which, while not indorsing the corporation, or its financial standing, spoke in encouraging terms of the project to erect such a building. In short, the evidence shows that a gross fraud was perpetrated by that corporation on defendant in inducing him to purchase its stock. It was to throttle in their infancy just such schemes as this that our "Blue Sky Law" (Investment Companies Act, Stats. 1913, p. 715) was enacted, and it was the imposition being practiced on a confiding public by promoters of such schemes which gave birth to the law.

The only question in the case worthy of further consideration is connected with the findings in respect of plaintiff's relation to the promissory note, the subject of the action.

The court found that the note sued on was assigned to plaintiff by the Securities Corporation on July 8, 1916, by S. H. Whisner, its president, and plaintiff paid therefor $350; that plaintiff at that time was a lawyer engaged in a general law practice; that the stock for which said note was given in part payment was issued on the same day; that plaintiff's attorney in this action was the secretary of said Securities Corporation at the time said stock was issued and at the time this action was commenced; that at the time he purchased said note, plaintiff knew the said Securities Corporation or other corporations organized and controlled by said Whisner were involved in litigation; "that plaintiff made no inquiry or effort to learn whether or not said note was valid and given for a valuable consideration but did inquire into the financial

condition of the defendant and learned that he was able to pay the note and then purchased the same intending to bring suit upon it if it should not be promptly paid.'' The face value of the note when transferred was $423.33. It was, therefore, discounted to the extent of $73, and no explanation is given why the Securities Company was willing to sell the note, falling due in so short a time, for so great a discount, the maker of which concededly was able to pay it; nor is there any explanation of the fact that the president of the payee corporation was required by the plaintiff to personally guarantee the payment; nor why plaintiff did not, after the defendant had refused to pay the note, call upon the guarantor for payment before bringing suit against the maker, which, under the circumstances shown, would have been a natural thing to do and upon whom he had the right to call immediately without demand or notice. (Civ. Code, sec. 2807.) Plaintiff testified that he made no inquiry from the president of the company as to his authority to assign the note, nor from the secretary of the corporation, his attorney herein, as to the consideration given for the note nor as to any of the circumstances under which it was given, nor as to any fact from any person except to ascertain that defendant was able to pay it. Plaintiff was an attorney at law engaged in the practice of his profession and did not claim to be a purchaser of commercial paper in the regular course of his business. Plaintiff testified that he did not purchase the note with the intention of bringing suit should defendant fail to pay, and that if he had supposed it would have been necessary for him to do so, he would have had nothing to do with it. The finding of the court is to the contrary, and if it was not justified in doing so, there remain findings sufficiently supported by the evidence to justify the judgment.

The rule in this class of cases is stated in *Jordan* v. *Grover*, 99 Cal. 194, [33 Pac. 908]. In that case plaintiffs purchased the promissory note in question "before maturity and for one-half of its face value, with knowledge upon inquiry previously made of the maker's solvency, but without inquiry as to the consideration thereof; nor was there any reason or explanation given for the purchase of the note at a price so grossly inadequate to its actual value. These circumstances," said the court, "were of themselves sufficient to arouse the suspicions of an ordinarily prudent man and put him on inquiry as to

the consideration, therefore material for the consideration of the jury in determining whether the purchase was made by plaintiffs in good faith.'' The rule there stated ''as well settled'' was: ''Where fraud or illegality in the inception of the note is shown by the maker, the burden of proof is then cast upon the indorsee to show that he is an innocent holder'' (citing cases), and the court said: ''The plaintiffs must, therefore, in order to sustain the burden thus cast upon them, show that they purchased the note before maturity in good faith, for value in the usual course of business, and 'under circumstances which create no presumptions that they knew the facts which impeach its validity. (1 Daniel on Negotiable Instruments, 4th ed., sec. 815.)' ''

It is a fair inference from the evidence that the president and secretary of the corporation knew that its stock, which was the consideration given for the note sued upon, was sold under false representations and that there was in fact nothing of value given as a consideration for the note. We think, too, that the facts and circumstances elicited at the trial were such as justified the court in its conclusion ''that plaintiff is not an innocent purchaser nor a *bona fide* holder of said note.'' The circumstances under which the note was sold to plaintiff; the heavy discount offered so near to the due date of the note, the maker of which was known by both the corporation and plaintiff to be able to pay, would have suggested to an ordinarily prudent man that there might be some infirmity in the paper and that it might not be safe to rest wholly on an inquiry as to the ability of the maker of the note to pay it when due. We do not think that plaintiff sustained the burden which was cast upon him by proof that the note was tainted with fraud and was without consideration. Plaintiff was put upon inquiry which, had it been reasonably pursued, would have placed him in possession of the facts. He testified: ''I think Mr. Whisner [his guarantor] is able to reimburse me and will do so, I think, if I am unsuccessful in this case.'' It is not improbable that his reliance upon Mr. Whisner's ability to respond to his guaranty led plaintiff to be indifferent as to the circumstances surrounding the execution of the note. His investment was safe in any event.

We think the judgment should be affirmed, and it is so ordered.

Hart, J., and Burnett, J., concurred.